Nos. 11-2720 & 11-2727

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

UNITED STATES,

*Appellee,*

v.

ALI HIJAZI,

*Appellant/Petitioner.*

_____

**ALI HIJAZI'S MOTION FOR RECONSIDERTION AND REPLY IN
SUPPORT OF MOTION TO VACATE THE DISTRICT COURT'S ORDER &
OPINION OF JULY 18, 2011**

Appellant Ali Hijazi respectfully moves for reconsideration of this Court's

order entered yesterday, September 21, 2011, denying his motion to vacate the

decision below before Mr. Hijazi's reply to the Government's response was due.  The

Government's response to Mr. Hijazi's motion was filed on September 15, 2011.  Mr.

Hijazi's reply is therefore due today, September 22, 2011.  Although this Court's

precedents hold that a lower court decision should be vacated when mootness occurs

on appeal, this Court's order does not explain why Mr. Hijazi's motion to vacate the

decision below was denied.  The arguments in the Government's response to Mr.

Hijazi's motion are addressed herein.

The Government takes a very narrow, and quite wrong, view of the scope of

the vacatur doctrine.  The Government argues that the doctrine does not apply to

"rulings on pre-trial matters" (Response at 4) and thus does not apply to the

decision below, which denied Mr. Hijazi's pre-trial motions to dismiss.  But the

1

vacatur doctrine is broader than the Government suggests.  Indeed, this Court's cases clearly establish that the doctrine applies to pre-trial rulings and orders.  For example, the vacatur doctrine was applied in *United States v. Fischer*, 833 F.2d 647 (7th Cir. 1987), to a district court order granting a criminal defendant's motion for reimbursement of escrowed funds.  After the Government appealed the order, the defendant struck a plea bargain and agreed to forfeit the funds, thus mooting the appeal.  This Court vacated the order.  *See Fischer*, 833 F.2d at 649.[1]  And *Fischer* is by no means the only case in which this Court has applied the doctrine to pre-trial orders.  *See Barbour v. Cent. Cartage, Inc.*, 583 F.2d 335, 337 (7th Cir. 1978) (applying the vacatur doctrine to a district court order denying the NLRB's request for temporary injunctive relief).

The Government relatedly contends that the vacatur doctrine applies only to "judgments" and quotes a dictionary definition that a judgment is "[a] court's final determination of the rights and obligations of the parties in a case."  Response at 4 (quoting Black's Law Dictionary (9th ed. 2009)).  But the district court's Order & Opinion *is* a judgment.  It is a judgment that Mr. Hijazi's motions to dismiss lacked merit as a matter of law should be denied.  Nor does the Government's dictionary definition support its position.  The Government conveniently omits the very next sentence in the dictionary:  "The term *judgment* includes an equitable decree and *any order from which an appeal lies*."  Black's Law Dictionary (9th ed. 2009) (citing Fed. R. Civ. P. 54) (viewed on WestlawNext) (second emphasis added).  The vacatur

---

[1] The Government agrees that the vacatur doctrine applies in criminal cases.  *See* Response at 11 (citing *Fischer*).

doctrine applies to any district court decision or order that is up for review by the court of appeals when mootness occurs.  *See United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 570 (7th Cir. 1987) (agreeing with the Government's initial request "to vacate the district court's decision and order, which we must do when a district court decision becomes moot pending appeal"); *Barbour*, 583 F.2d at 337 (referring to a district court order denying temporary injunctive relief as a "judgment" and directing the district court to vacate the same).  An appellate court has the power to vacate (in proper circumstances) any lower court ruling that comes up to it for review.  *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 22 (1994) (holding that the practice of vacatur is not prohibited by Article III, even though a case is moot when vacatur is ordered).  This power is rooted in the very statute which provides this Court with the power of vacatur, which provides that the Supreme Court or any appellate court may vacate "any *judgment, decree, or order*" of a lower court "lawfully brought before it for review." 28 U.S.C. § 2106 (emphasis added).  The applicability of the statute is in no way confined to a judgment on the ultimate merits of a case.

The Government contends that the decision below should not be vacated because that ruling has no res judicata effect and will not cause Mr. Hijazi to suffer any unfair legal consequences.  *See* Response at 4-5.  But the very "point of vacatur is to *prevent* an unreviewable decision 'from spawning any legal consequences,' so that no party is harmed by what we have called a 'preliminary' adjudication." *Camreta v. Greene*, 131 S. Ct. 2020, 2035 (2011) (quoting *United States v.*

*Munsingwear*, 340 U.S. 36, 40-41 (1950) (emphasis added)).  *See also CFTC v. Bd. of Trade of City of Chi.*, 701 F.2d 653, 656-657 (7th Cir. 1983) ("The reason for vacating a lower court's decision when the case becomes moot pending appeal is to make sure that a decision of which the losing party was denied appellate review will not have preclusive effect in subsequent litigation between the parties.").  Here, only vacatur will ensure that the Order & Opinion does not have any preclusive effect.  So long as future use of an unvacated order is *possible* and the parties were denied the opportunity to fully litigate the issues, as here, the only way to guarantee that no future legal consequences stem from the Order & Opinion is to vacate it.

The Government, bizarrely, appears to suggest that this rationale should be turned on its head — that vacatur is not appropriate *because* the case is moot.  *See* Response at 13 (using the *Powell* mootness standard to argue against vacatur of the underlying order).  The Supreme Court itself has flatly rejected such an argument. *See U.S. Bancorp*, 513 U.S. at 21 (rejecting the claim that an appellate court may not vacate a decision once there is no longer an Article III case or controversy). Moreover, the Government does not contend that any of the exceptions to the vacatur rule (*e.g.*, when mootness results from a settlement) apply here, nor has the Government offered any affirmative reason why vacatur should *not* be granted.

The Government observes that vacatur is an equitable remedy, *see* Response at 5-6, which is true.  But this does not mean that courts are free to grant or deny vacatur on an ad hoc basis.  Equity has given birth to a rule — "vacatur *must be*

*granted* where mootness results from the unilateral action of the party who prevailed in the lower court." *U.S. Bancorp*, 513 U.S. at 23 (emphasis added).[2] As Judge Posner wrote for this Court: "On the . . . question whether a court of appeals must vacate the district court's decision when the case becomes moot after the decision is entered but before the appeal is decided, the answer is not in doubt:  it must." *Bd. of Trade of City of Chi.*, 701 F.2d at 656.  *See also Great W. Sugar Co. v. Nelson*, 442 U.S. 92, 94 (1979) (granting vacatur "[b]ecause the fact of mootness is clear" and "because the law as laid down by this Court in [*Munsingwear* and other cases] is equally clear").

In any event, equitable considerations specific to this case support vacatur. Mr. Hijazi believes that the Order & Opinion — which ruled that the criminal accusations levied against Mr. Hijazi by the U.S. government were sufficient as a matter of law to avoid dismissal and proceed to trial — is damaging to his personal and professional reputation in Kuwait and the whole world business community. The Order & Opinion recites numerous allegations of criminal wrongdoing on the part of Mr. Hijazi.  And some which were not even alleged in the indictment itself. *See*, *e.g.*, Order & Opinion at 13 ("based upon the allegations of the Second Superseding Indictment, Hijazi knowingly schemed to defraud the United States of over $3.5 million"); *id.* at 14 ("Hijazi's actions were intended to have a substantial effect on the United States, namely the theft of millions of dollars from its

---

[2] The Government concedes that it unilaterally mooted Mr. Hijazi's appeal.  *See* Response at 9 ("In this case, . . . mootness was caused by the unilateral action of the United States in moving to dismiss the indictment with prejudice").

treasury"); *id.* at 15 ("the allegations of the Second Superseding Indictment and Subcontract 39 make it plausible that Hijazi knew that his actions were to have such an effect"). Although the Order & Opinion duly notes that the recited allegations are "taken as true for purposes of ruling on the pending motions to dismiss," *id.* at 2, the American standard of review on a motion to dismiss might not be fully appreciated by Mr. Hijazi's friends and associates in Kuwait and the world. This Court recognized in its 2009 opinion that a ruling denying Mr. Hijazi's motions to dismiss would have "adverse consequences" for him by, for example, making it harder back home "to protest that the indictment is legally flawed as a matter of U.S. law." *In re Hijazi*, 589 F.3d 401, 413 (7th Cir. 2009). Vacatur would ameliorate some of the harm to Mr. Hijazi's reputation and business caused by the Order & Opinion and the Government's six-year-long prosecution of him. *Cf. Microsoft Corp.* v. *Bristol Tech., Inc.*, 250 F.3d 152, 156 (2d Cir. 2001) ("A final equitable consideration [supporting vacatur] is that individuals (some not named parties) are the subject of moral appraisals integral to the findings on punitive damages.").

Finally, the highly irregular procedural history of this case also supports vacatur. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 74 (1997) (agreeing that Arizona's "plea for vacatur is compelling in view of the extraordinary course of this litigation"). It is fair to say that the Order & Opinion did not come about through the normal course of proceedings. Mr. Hijazi filed his first motion to dismiss in 2005, but the district court declined to rule on that motion and two

6

subsequently filed motions to dismiss.  In 2009, four years after the district court's declination, this Court issued a writ of mandamus directing the district court to rule promptly on Mr. Hijazi's motions.  That did not happen.[3]  In 2011, when the district court still had not ruled, this Court issue a second writ of mandamus that ordered the court below to rule within 30 days.  After the district court finally ruled, Mr. Hijazi appealed the ruling to this Court.  One day before Mr. Hijazi's opening brief was due, the Government informed this Court that it would rather halt the prosecution of Mr. Hijazi than try to defend the Order & Opinion before this Court.  The Government then moved the district court to dismiss all charges against Mr. Hijazi with prejudice, and the court did so, thereby mooting Mr. Hijazi's appeal.  Given this extraordinary case history, the Government should have offered a compelling reason why the decision below, which the Government declined to defend on appeal, should not be subject to the default rule of vacatur.  It has failed to do so.

*     *     *

For the foregoing reasons, Appellant Ali Hijazi respectfully requests that this Court grant reconsideration and vacate the district court's Order & Opinion of July 18, 2011.

---

[3] In the meantime, Mr. Hijazi's co-defendant, Jeff Mazon, stood trial twice on the same charges of which Mr. Hijazi was accused.  Both times the Government failed to obtain a conviction and ended with a mistrial.  Ultimately, Mr. Mazon was allowed to plead to a non-fraud misdemeanor and the indictment against him was dismissed with prejudice.

Respectfully submitted,

/s/ H. Christopher Bartolomucci

Bruce A. Baird                              H. Christopher Bartolomucci
Robert A. Long, Jr.                         (Counsel of Record)
COVINGTON & BURLING LLP                     Erin E. Murphy
1201 Pennsylvania Avenue, N.W.              BANCROFT PLLC
Washington, D.C. 20004                      1919 M Street, N.W., Suite 470
(202) 662-6000                              Washington, D.C. 20036
                                            (202) 234-0090


Dan Himmelfarb                              Timothy S. Bishop
MAYER BROWN LLP                             MAYER BROWN LLP
1999 K Street, N.W.                         71 South Wacker Drive
Washington, D.C. 20006                      Chicago, IL 60606
(202) 263-3000                              (312) 782-0600


September 22, 2011                          *Counsel for Ali Hijazi*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of September, 2011, an electronic copy of the foregoing Ali Hijazi's Motion for Reconsideration and Reply in Support of Suggestion of Mootness and Motion to Vacate the District Court's Order & Opinion of July 18, 2011 was served on:

James A. Lewis
U.S. Attorney's Office
318 S. Sixth Street
Springfield, IL 62701

Jeffrey B. Lang
Matthew Cannon
1830 Second Avenue, Third Floor
Rock Island, IL 61201-8003

John A. Michelich
U.S. Department of Justice
1400 New York Avenue, N.W.
Room 4188
Washington, D.C. 20530

Honorable Joe Billy McDade
U.S. District Judge
122 U.S. Courthouse
100 N.E. Monroe Street
Peoria, IL 61602

/s/ H. Christopher Bartolomucci